1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

ADAM G.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

CASE NO. 2:23-CV-412-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

16

17

18

19

20

21

22

       Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's

denial of his application for disability insurance benefits ("DIB").[1] After considering the record,

the Court concludes the Administrative Law Judge ("ALJ") erred in her evaluation of Plaintiff's

subjective symptom testimony about his headaches. Had the ALJ properly addressed Plaintiff's

testimony, Plaintiff's residual functional capacity ("RFC") may have included additional

limitations. The ALJ's error is, therefore, not harmless, and this matter is reversed and remanded

23

24

_____

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties
have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

1   pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security

2   ("Commissioner") for further proceedings consistent with this Order.

3       **I.      Factual and Procedural History**

4       Plaintiff filed a claim for DIB in July 2020, alleging disability beginning on March 24,

5   2020. Dkt. 5, Administrative Record ("AR") 197. His application was denied at the initial level

6   and on reconsideration. AR 68, 99, 106, 117. He requested a hearing before an ALJ, which was

7   held telephonically. AR 15, 35, 114. Plaintiff was represented by counsel at the hearing. AR 35.

8   The ALJ issued an unfavorable decision on June 29, 2022, and the Appeals Council denied

9   Plaintiff's request for review. AR 1–6, 12–34, 334–37. Plaintiff appealed to this Court. Dkt. 1.

10      **II.     Standard of Review**

11      When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

12  may set aside the denial of social security benefits if the ALJ's findings are based on legal error

13  or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

14  1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial

15  evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*,

16  574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere

17  scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—'such

18  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

19  (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

20      "[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical

21  testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)

22  (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the

23  evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

1    must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v.*

2    *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning

3    behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*,

4    806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary

5    because [the Court] can affirm the agency's decision to deny benefits only on the grounds

6    invoked by the agency." *Id.*

7        "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

8    674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

9    Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

10   the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

11   1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

12   **III.    Discussion**

13       Plaintiff contends the ALJ erred at multiple steps of the sequential evaluation: by failing

14   to find certain severe impairments at Step Two, in evaluating Plaintiff's subjective symptom

15   testimony, in considering certain medical opinion evidence, and in her determination of

16   Plaintiff's RFC and past relevant work. Dkt. 7 at 1. Plaintiff argues that the proper remedy for

17   these errors is reversal for an immediate award of benefits. *Id.*

18       A.  *Subjective Symptom Testimony*

19       Plaintiff contends the ALJ erred in discounting his allegations regarding the impact of his

20   impairments on his ability to work. Dkt. 7 at 10.

21           1.  Subjective Symptom Testimony Standard

22       "An ALJ engages in a two-step analysis to determine whether a claimant's testimony

23   regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th

24

1  Cir. 2014). At the first step, the ALJ determines whether the claimant has presented objective

2  medical evidence of an underlying impairment that could reasonably be expected to produce the

3  pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged

4  symptoms; rather, "the medical evidence need only establish that the impairment could

5  reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14

6  F.4th 1108, 1111 (9th Cir. 2021).

7     If the claimant satisfies this first step and there is no affirmative evidence of malingering,

8  "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by

9  offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759

10  F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.*

11  (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this

12  standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-*

13  *Hunter*, 806 F.3d at 489.

14     The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ

15  to make "specific finding[s]:"

16     [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a
       claimant's testimony by simply reciting the medical evidence in support of his or
17     her residual functional capacity determination. To ensure that our review of the
       ALJ's credibility determination is meaningful, and that the claimant's testimony is
18     not rejected arbitrarily, we require the ALJ to specify which testimony she finds
       not credible, and then provide clear and convincing reasons, supported by evidence
19     in the record, to support that credibility determination.

20  *Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether

21  our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

22  power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

1  the ALJ, the specific, clear, and convincing reasons also must be supported by substantial

2  evidence in the record as a whole. 42 U.S.C. § 405(g).

3                    2.   Analysis

4         Plaintiff alleged he could not work because of cognitive impairments following five brain

5  surgeries and a coma, chronic headaches, and depression. AR 231, 247. The record shows

6  Plaintiff had multiple brain surgeries to address a pineal gland tumor, including placement of a

7  ventriculoperitoneal ("VP") shunt. *See* AR 421–27, 444, 840–41. In 2017, he underwent a VP

8  shunt revision surgery after presenting with headaches, confusion, and lethargy linked to shunt

9  malfunction. AR 539, 840. On several occasions after the revision surgery, Plaintiff presented

10  with unusual headaches, and the VP shunt had to be adjusted. *See* AR 420–27, 444–52, 536–40,

11  844–46. Magnetic resonance imaging of Plaintiff's brain since 2015 has shown a stable pineal

12  gland lesion and multiple radiation-induced cavernous malformations,[2] including a "noted

13  cavernoma in his left temporal lobe." AR 450, 520, 538, 856.

14         Plaintiff completed a headache questionnaire dated September 28, 2020, in which he

15  described "nearly constant" headache pain at a "pain level of about 5 out of 10," with

16  "occasional brief times of relief." AR 243–45. He stated "[f]ocusing on detailed tasks" or

17  "extended tasks requiring concentration" worsened his headache pain. AR 244. He was taking

18  Nortriptyline and Ibuprofen for his headaches but wrote the medications did "not really" help. *Id.*

19         In function reports dated September 29, 2020, and August 20, 2021, Plaintiff also

20  reported significant problems with memory, concentration, and focus. *See* AR 248, 250, 252,

21

22

23         [2] "Cerebral cavernous malformations are collections of small blood vessels (capillaries) in the brain that are enlarged and irregular in structure. These capillaries have abnormally thin walls, and they lack other support tissues, such as elastic fibers, which normally make them stretchy. As a result, the blood vessels are prone to leakage, which can cause the health problems related to this condition." *Rodriguez v. Astrue*, Civ. No. 12-272 ACT, 2013 WL

24  12329109, at *3 n.4 (D.N.M. Sept. 12, 2013).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

1   294–96. He used a daily checklist to remind him to complete tasks such as brushing his teeth,

2   showering, and doing yoga, and needed reminders to take medications, go places, and take care

3   of his pets. AR 249–52, 294–96. He claimed he struggled to follow written or spoken

4   instructions. AR 252. Plaintiff also described forgetting to pay bills or sending double payment

5   and watching movies that he was unable to remember seeing the following week. AR 294, 296.

6   Although the earlier function report stated that he could pay attention for 15 minutes, Plaintiff

7   wrote in the later function report that he could focus for only about five minutes if alone and in a

8   quiet environment but was easily distracted by the slightest interruption. AR 252, 296. He

9   maintained that he struggled to finish what he started or focus on detailed tasks. AR 248, 252,

10   296. Plaintiff stated he was able to tend to his personal care, prepare some simple meals, care for

11   his pets, perform household chores, do yard work, drive, and shop in stores. AR 248–51, 294–96.

12        Plaintiff wrote a letter to the ALJ dated May 11, 2022, in which he described his typical

13   routine. AR 318. He stated his daily activities varied according to the severity of his headache

14   each day. *Id.* On days when he wakes up with severe headache pain, Plaintiff immediately

15   "begin[s] the process of addressing that pain." *Id.* He described an "extensive and time

16   consuming" system that was "fairly effective" in alleviating his symptoms on bad days. *Id.* This

17   system included meditation, stretching, soaking in a hot tub, drinking water, and napping, all of

18   which took up much of the day. *Id.* He estimated that he needed to use this system on "nearly

19   75% of [his] days." *Id.* When the pain was less severe, Plaintiff wrote he would do "some light

20   housework, perhaps some yardwork, [and] run some errands" before taking a nap and waiting for

21   his wife to return from work. *Id.* He stated this was "about the most [he] can expect out of

22   [himself]" and would consider this to be a successful day. *Id.*

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

1    At the hearing before the ALJ on June 9, 2022, Plaintiff testified he had varying levels of

2  headaches and "ringing in his head" every day, which were "pretty severe" most days. AR 44–

3  47. He described this ringing sensation as "a fire alarm going off in [his] head" that made it very

4  difficult to focus and concentrate. AR 54–55. Plaintiff stated he used a daily "process" to try and

5  "reduce [the headaches] so [he] can function." AR 48. Plaintiff also testified to experiencing

6  vertigo, which seemed to be worsening. AR 57. He stated he used a cane intermittently for

7  balance and gave the example of taking the cane with him when working in the yard to "make

8  sure [he] wouldn't fall over." AR 57–58. Plaintiff described "puttering around in the yard" and

9  pulling a few weeds for about a minute at a time before having to sit down. *Id.* He stated he kept

10  chairs "strategically placed" around the yard so he did not "have to go more than a few steps

11  without having a stop available" if he needed to sit down. *Id.*

12    The ALJ found Plaintiff's medically determinable impairments could reasonably be

13  expected to cause his alleged symptoms. AR 23. However, she found his "statements concerning

14  the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent

15  with the medical evidence and other evidence in the record for the reasons explained in this

16  decision." *Id.* The ALJ then included three paragraphs summarizing Plaintiff's medical history.

17  *See* AR 23–24. After these recitations and the ALJ's evaluation of the prior administrative

18  findings and medical opinion evidence, the ALJ explained her reasoning for discounting

19  Plaintiff's alleged symptoms:

20      The claimant's allegations of a disabling condition are not fully consistent with his
        treatment notes. While his medically determinable impairments could reasonably
21      be expected to produce some of the alleged symptoms, the objective medical
        evidence does not reasonably substantiate his allegations about intensity,
22      persistence and functionally limiting effects of the symptoms. The claimant
        testified he underwent multiple surgeries due to a tumor in his head, but he
23      continues to experience daily headaches and a ringing sensation in his head that
        makes it difficult to focus and concentrate. He also testified he experienced a

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1    seizure in 2016 but his epilepsy is now controlled with medication. He stated he
2    has vertigo, and he uses a cane to help with balance, but he is able to do light
     cleaning and yard work. As noted above, the claimant's treatment notes show he
3    underwent treatment for a pineal tumor, and he complained of headaches, but
     examinations showed he was alert and fully oriented. He was obese but he
4    ambulated with a normal gait, and he had good strength in his extremities. There is
     no evidence he required a cane or other assistive device to ambulate. He also
5    complained of cognitive deficits, but he was able to answer questions appropriately
     and examinations showed his memory, attention and concentration were intact
6    (Exhibit 3F/3-6, 5F/77-108, 5F/126, 5F/152, 10F/11-15, 11F/28-37, 16F/1-7,
     17F/2). During a consultative examination, he was able to answer questions
7    spontaneously and he demonstrated no difficulty with attention or concentration.
     His thought process was normal, and his memory was intact (Exhibit 9F). Based on
8    the objective findings and his reported level of activities, the undersigned finds he
     is able to perform light work with additional postural and environmental
9    limitations. The undersigned acknowledges the claimant does experience some
     limitations but not to the extent alleged.

10   AR 27.

11       The ALJ's explanation does not provide sufficiently specific, clear, and convincing

12   reasons for discounting Plaintiff's testimony, particularly his testimony regarding his headaches.

13   Without "an accurate and logical bridge from the evidence to [the ALJ's] conclusions[,]" this

14   Court cannot conduct a "meaningful review" of the decision. *See Blakes v. Barnhart*, 331 F.3d

15   565, 569 (7th Cir. 2003).

16       Despite acknowledging Plaintiff's testimony that he suffered from daily headaches, the

17   ALJ did not adequately explain her reasoning for discounting Plaintiff's statements about the

18   severity of his headache pain. The only specific reason given by the ALJ for disbelieving

19   Plaintiff's reports of persistent headache pain was that he was "alert and fully oriented" at many

20   of his medical appointments. AR 27. Indeed, some of the ALJ's citations reflect these statements

21   in the record. *See* AR 831, 849, 1028, 1037. But the ALJ does not explain why Plaintiff's alert

22   and oriented presentation at some medical appointments is inconsistent with his reports of

23   headache pain. Plaintiff testified that his headaches varied in severity, but the ALJ did not

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

1   account for any difference between good and bad days throughout her evaluation of Plaintiff's

2   symptom testimony.

3          The ALJ noted Plaintiff experienced a seizure in 2016 and his epilepsy is now controlled

4   with medication. Plaintiff testified at the hearing that he had his first seizure in 2016 and his most

5   recent seizure had occurred six to eight months before the hearing, when he was diagnosed with

6   epilepsy and prescribed medication. AR 42–43, 45–46. The record shows Plaintiff reported an

7   incident in which he stopped breathing and lost consciousness on an airplane in 2015 or 2016.

8   AR 991, 1046. In late 2021, Plaintiff reported a similar incident and began taking an

9   anticonvulsant medication. AR 1025, 1046, 1085. On April 22, 2022, Plaintiff's neurologist

10  noted his "seizure disorder [was] stable" on his current medication. AR 1045. The ALJ's

11  statement is adequately supported by the record, but she provided no explanation of how this

12  impacts Plaintiff's credibility.

13         The ALJ also referenced Plaintiff's reported vertigo and use of a cane for balance before

14  stating that Plaintiff ambulated with a normal gait, had good strength in his extremities, and had

15  not shown he needed a cane to ambulate. AR 27. But Plaintiff testified only that he used a cane

16  to maintain his balance when he experienced vertigo, not that he had an abnormal gait,

17  diminished strength in his extremities, or inability to walk without assistance.

18         The ALJ generally cited Plaintiff's "reported level of activities" as justification for the

19  RFC. AR 27. Although [i]nconsistencies between a claimant's testimony and the claimant's

20  reported activities provide a valid reason for an adverse credibility determination[,]" the ALJ

21  must explain "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony."

22  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original). The only specific

23  activities mentioned are "light cleaning and yard work." AR 27. Again, the ALJ does not explain

24

1 | how these activities conflict with Plaintiff's alleged headache symptoms or address the fact that

2 | Plaintiff stated he was able to engage in these activities on days when his headache pain was less

3 | severe.

4 |      Finally, the ALJ addressed Plaintiff's alleged cognitive deficits, referencing both his

5 | mental status as noted by his medical providers and the results of a consultative examination. AR

6 | 27. The ALJ cited to a psychiatric evaluation conducted on March 11, 2021, by consultative

7 | examiner Brendon Scholtz, Ph.D., focused on assessing Plaintiff's memory functioning. AR 27,

8 | 828. Dr. Scholtz administered several simple memory tests and concluded that Plaintiff's

9 | working memory appeared to be in the "Average range." AR 829, 831. Dr. Scholtz opined that

10 | Plaintiff's previous "memory function was likely in at least the High Average range," which

11 | would account for Plaintiff's perceived cognitive decline. AR 833–34. Although the objective

12 | test results do not show below average functioning, the consultative examiner's report does not

13 | contradict Plaintiff's *perceived* decline in memory function. The ALJ also failed to analyze

14 | whether these findings on Plaintiff's cognition applied equally when his headache pain was

15 | severe and how they demonstrated Plaintiff's ability to concentrate and focus on detailed tasks in

16 | a work setting.

17 |      Had the ALJ properly considered Plaintiff's testimony, the RFC and hypothetical

18 | questions posed to the vocational expert ("VE") may have contained additional limitations. For

19 | instance, the RFC and hypothetical questions to the VE may have included limitations reflecting

20 | Plaintiff's testimony that the severity of his headaches affected his ability to concentrate on

21 | detailed tasks. Because the ultimate disability determination may have changed with proper

22 | consideration of Plaintiff's testimony about his headaches, the ALJ's error is not harmless and

23 | requires reversal. *See Molina*, 674 F.3d at 1115.

24 |

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1    B. *Remedy*

2    Plaintiff argues that, given his advanced age and RFC, the proper remedy for the errors in

3 the ALJ's decision is reversal for an immediate award of benefits. Dkt. 14 at 1.

4    The Court may remand a case "either for additional evidence and findings or to award

5 benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

6 reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

7 agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

8 Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The Ninth Circuit created a "test for

9 determining when evidence should be credited and an immediate award of benefits directed[.]"

10 *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded

11 where:

12    (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
      claimant's] evidence, (2) there are no outstanding issues that must be resolved
13    before a determination of disability can be made, and (3) it is clear from the record
      that the ALJ would be required to find the claimant disabled were such evidence
14    credited.

15 *Smolen*, 80 F.3d at 1292.

16    The Court has determined the ALJ must re-evaluate Plaintiff's subjective symptom

17 testimony. Further, based on the above identified errors, issues remain that must be resolved

18 concerning Plaintiff's functional capabilities and his ability to perform other jobs existing in

19 significant numbers in the national economy. Therefore, remand for further administrative

20 proceedings is appropriate.

21    As the ALJ's error impacts all aspects of the ALJ's decision, the ALJ is instructed to re-

22 evaluate this entire matter on remand. Thus, it is unnecessary to address the other issues raised in

23 Plaintiff's appeal.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11

1    **IV.    Conclusion**

2         Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

3    Plaintiff was not disabled. Accordingly, the Commissioner's decision to deny benefits is reversed

4    and this matter is remanded for further administrative proceedings in accordance with the

5    findings contained herein.

6         Dated this 4th day of January, 2024.

7

8                                             _____
                                              David W. Christel
9                                             Chief United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 12